# United States Court of Appeals
## For the First Circuit

No. 19-1833

JOHN DOE, Father and Next Friend of Minor A, B, and C,

Plaintiff - Appellant,

v.

LINDA SPEARS, in her official and individual capacity, PATRICIA KELLY, in her official and individual capacity, JUDITH EDWARDS, in her official and individual capacity,

Defendants - Appellees.

Before

Thompson, Selya and Barron,
Circuit Judges.

**JUDGMENT**

Entered: November 16, 2021

    Plaintiff-appellant, purportedly on behalf of himself and his three minor sons, filed suit in the United States District Court for the District of Massachusetts against three persons employed by the Massachusetts Department of Children and Families (DCF): department head Linda Spears; supervisor Judith Edwards, and caseworker Patricia Kelly.[1]

    The district court dismissed the amended complaint in its entirety per Federal Rule of Civil Procedure 12(b). See Doe v. Spears, 393 F. Supp. 3d 123 (D. Mass. 2019). This appeal followed. The relevant background facts, and the disposition of claims that raise no substantial issue for

---

[1] The complaint, as amended, is pseudonymous. Hereinafter, we refer to plaintiff-appellant as "the father," or "the plaintiff"; the children as "A", "B," and "C"; and the children's mother as "the mother." In footnote one of its decisional order, the district court admonished plaintiff for failing to seek leave to file his complaint under a pseudonym. We caution plaintiff to heed the district court's admonishment on remand, and request leave if he still wants to proceed under a pseudonym.

    Additionally, the father purported below to be proceeding on behalf of himself and his children. We offer no opinion at this time as to whether he may do so and leave that issue to the district court in the first instance.

appeal, are addressed in the next section. Claims raising substantial appellate questions are then discussed in the section following. Ultimately, the decision of the district court will be affirmed in part and vacated in part, and the matter will be remanded for further proceedings. At the end, we note certain specific issues that we decline to address in the first instance and thus leave to the district court on remand.

## I. BACKGROUND

### A. The Allegations

The following recitation is drawn from the allegations set out in the operative complaint. The youngest son, "C," is alleged to have a learning disability. An incident from October 2014 was reported to DCF, alleging that C had slapped and kicked his father and that the father had slapped and kicked C in return. The father alleges that the actual incident involved no such violence and that C was merely returned to his room temporarily to recover from a temper tantrum. Defendant Kelly visited the home, briefly interviewed the children, had a curt exchange with the father, and left. Reportedly, she received conflicting information from the interviewees, but decided in favor of removal of the children from the father's home. More than a month later, she did take the children from the father's home, placed them in the mother's home, and petitioned for court approval of the removal pending a final adjudication of the abuse allegations against the father. A state court (the juvenile court) approved the removal, while a different state court (the probate court) adjudicated custody of the children in the face of the abuse allegations. The father received court approval to visit with his sons, which included supervised visitation that the father had to pay for out of his own pocket. Ultimately, more than a year after the proceedings were initiated by DCF, DCF closed its file on the alleged abuse and was dismissed from the proceedings, with no allegation of abuse against the father having been substantiated. It appears that the proceedings in the probate court continued, during which time the father was afforded more liberal visitation rights. Each of the children is alleged to have suffered major and lasting setbacks in their well-being during the separation from their father.

The father's pro se amended complaint contains sixteen "counts" against the defendants, asserted under various provisions of state and federal law. The core factual allegations can be broken down into three categories: 1) that the defendants had conducted a hasty and incomplete investigation; 2) that at least one defendant had made false representations in state court; and 3) that the defendants had actively interfered with the court-approved visitation between the father and the children with a kind of 'double-sided' deception, concealing from the children their father's requests for visitation and actively discouraging and inhibiting the children from having contact with the father, while also telling the father his children expressed a desire not to see him. The father conceded in the complaint that he and the children still had managed some surreptitious contact. Regarding the second category above, it was alleged that, only a few months before DCF closed its case, defendant Kelly had misrepresented to the state court the opinion of a therapist on the suitability of the father as a parent. A few months after the dismissal, the father allegedly called the therapist as a witness in probate court, and the therapist's testimony utterly refuted defendant Kelly's prior characterization of the therapist's views.

## B. The District Court's Ruling

Some claims in the amended complaint were against the defendants in their official capacities and were predicated on an assertion that sovereign immunity had been waived by the state's acceptance of federal funds. The district court correctly determined that this expansive waiver argument was not well taken and dismissed the official-capacity claims on the basis of the Eleventh Amendment and sovereign immunity. Another claim asserted liability under the federal Rehabilitation Act, based on alleged discrimination against C as a disabled person. The district court correctly determined that the contention that C was easily manipulated or taken advantage of because he suffered a learning disability did not make out a plausible claim of discrimination cognizable under the Rehabilitation Act.

Further, a claim alleging fraud under state law was correctly rejected because it lacked the specificity required under Federal Rule of Civil Procedure 9(b) and because the plaintiff had failed to allege reliance on the alleged misrepresentations. The district court also concluded, correctly, that claims against defendant Edwards and defendant Spears failed because there were no allegations to plausibly suggest either direct liability or liability on a respondeat superior basis. Edwards disclaimed knowledge of the alleged wrongdoing by defendant Kelly, and Spears did not even assume her position as head of DCF until the state court hearing on temporary removal of the children was well underway. A claim under the Massachusetts Tort Claims Act was correctly dismissed for failure to plead satisfaction of the presentment requirements of that provision. (With his brief, the plaintiff concedes that the district court properly rejected his attempt to bring a freestanding private claim under the state's child-protection statutes, Mass. Gen. Laws ch. 119.)

The district court also confronted claims for substantive violations of constitutional rights and state-law claims of intentional infliction of emotional distress, which are discussed further in the next section. The district court concluded those claims were barred by threshold defenses: state or federal versions of official/qualified immunity and the Rooker-Feldman doctrine (the latter as to only one specific claim).

Specifically, the plaintiff invoked the First, Fourth, Fifth and Fourteenth Amendments to assert family-based rights to privacy, liberty, free speech, and free association, and he asserted that the investigation, separation, and alleged interference with visitation that his family endured violated these constitutional rights and worked an intentional infliction of emotional distress under state law. The district court acknowledged that there is a recognized federal constitutional right to family integrity but reasoned that, because its boundaries are so ill-defined, a reasonable case worker in defendant Kelly's position would not have been on notice that the alleged wrongdoing violated said right. As to the state-law claim of intentional infliction of emotional distress, the district court was persuaded that the immunity under the common law of Massachusetts for "public officers acting in good faith, without malice and without corruption" applied. The immunity protects officers who are

> either authorized or required, in the exercise of [their] judgment and discretion, to make a decision and to perform acts in the making of that decision [whenever] the decision and acts are within the scope of [their] duty, authority and jurisdiction . . .

Gildea v. Ellershaw, 298 N.E.2d 847, 858-59 (Mass. 1973). Such officers will not be "liable for negligence or other error in the making of [a] decision, at the suit of a private individual claiming to have been damaged thereby." Id. at 858-59.

      Finally, the district court accepted that plaintiff had plausibly alleged a discrete federal constitutional violation insofar as intentionally false information about his therapist's opinion of his suitability as a parent had been presented in state court. However, the district court interpreted this claim as impugning the judgment of the state court that separated the father from his children and concluded that it was barred by the Rooker-Feldman doctrine. This doctrine

> bars jurisdiction only in the limited circumstances where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.

Tyler v. Supreme Judicial Ct. of Mass., 914 F.3d 47, 50 (1st Cir. 2019) (internal quotation marks omitted).

## II. DISCUSSION

      As the district court dismissed pursuant to Federal Rule of Civil Procedure 12(b), our review is de novo, and we view favorably to the plaintiff all well-pleaded facts and all reasonable inferences flowing from those facts. See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

      As noted above, the district court dismissed a single claim, a claim concerning allegedly false testimony as to the father's fitness, based on the Rooker-Feldman doctrine. The district court's application of the Rooker-Feldman doctrine appears to treat the *provisional* remedy of removal of the children from the father's custody as the end-point in the state court proceedings for purposes of Rooker-Feldman, at which point, the father was the "losing party." We question that conclusion and, more generally, question whether, as to the specific claim at issue, the father was "complaining of an injury caused by [a] state-court judgment." Tyler, 914 F.3d at 50. We do not view the Rooker-Feldman doctrine as an appropriate resort in this instance and thus vacate that portion of the district court's ruling, though the district court of course remains free to consider other bases for dismissal of the single affected claim and even to revisit the matter of Rooker-Feldman in the event subsequent proceedings reveal a proper basis to do so.

      The district court disposed of plaintiff's federal constitutional claims anent family integrity, asserted per 42 U.S.C. § 1983, by applying the doctrine of qualified immunity. Qualified immunity shields government officers from claims under § 1983 unless existing law places the unconstitutionality of an officer's conduct beyond debate. See D.C. v. Wesby, 138 S. Ct. 577, 589–90 (2018). The district court determined, correctly, that even the most favorable view of plaintiff's allegations about the shortcomings in DCF's investigation and its decision to remove the children from plaintiff's home could not overcome the defense of qualified immunity. See Wojcik v. Town of N. Smithfield, 76 F.3d 1, 3 (1st Cir. 1996)("But there is no way for the government to protect

children without making inquiries that in many cases do turn out to be baseless; so, too, the prosecution of crimes leads in some cases to acquittals and intrusive tax audits sometimes produce refunds."); Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 21 (1st Cir. 2001)("Indeed, evidence of even a single instance of abuse may constitute an exigent circumstance sufficient to warrant immediate state action on a child's behalf.").

However, it is our view that the district court did not expressly address to a sufficient degree the specific allegations that defendant Kelly had tried to sabotage court-approved visitation through intentional misrepresentations to the father and his children as to whether each wished to see or communicate with the other. The district court recognized the existence of "a constitutionally protected right to the parent-child relationship," 393 F. Supp. 3d at 131, and with the father and children separated, court-approved visitation would be well-nigh the remainder of that right. It is unclear to us whether the district court gave due consideration as to whether the alleged sabotage, standing on its own, sufficiently stated a claim of constitutional violation, especially given that the sabotage allegedly occurred after a court had sanctioned at least limited visitation; a related question, of course, would be whether Kelly would be entitled to qualified immunity as to such a claim. Cf. Slone v. Herman, 983 F.2d 107, 111 (8th Cir. 1993)(qualified immunity denied for noncompliance with court order). We ask that the district court take up these issues on remand and express no further opinion on the matter at this time.[2]

Plaintiff's claim(s) for intentional infliction of emotional distress was disposed of primarily on the basis of common law immunity under Massachusetts state law, though the district court also noted that the plaintiff had "merely recit[ed] the elements of the cause of action." 393 F. Supp. 3d at 133. While it is true that the portions of the complaint setting out the emotional-distress claims were not as detailed as some other portions of the complaint, the plaintiff did purport to incorporate all preceding allegations, and we question whether, under the applicable rules of liberal construction, the plaintiff perhaps did at least sufficiently allege a claim for intentional infliction of emotional distress. Any future analysis should address the claim in the context of the complaint as a whole. As for immunity, the Massachusetts version of immunity differs from federal qualified immunity, as good faith is indispensable to its application. The district court concluded that the plaintiff had offered no non-conclusory allegations plausibly suggesting bad faith or malice. We conclude that the factors discussed above, the allegations that defendant Kelly had sabotaged communication between the father and his children in order to thwart visitation *that a court expressly had authorized*, warrant closer inspection in this context as well. We take no definitive position at this time but do feel that the next decision addressed to the emotional-distress claims more clearly should reflect consideration of the foregoing (as noted above, the district court disposed of other claims based, at least in part, on state-law immunity; our views as to those other claims are set out above, and nothing in this paragraph is meant to speak to those claims).

Finally, we reject, at least for the moment, any invitation that this court affirm the dismissal of one or more claims based on the conclusion that absolute immunity extends to social workers. We leave the issue for another day and, if appropriate, for further consideration below. We note the Massachusetts Supreme Judicial Court's recent issuance of decision in C.M. v. Comm'r of Dep't

---

[2] With regard to immunity, this judgment should not prevent the district court from revisiting, on a more fulsome record, potential immunity as to any remaining claim.

of Child. & Fams., 169 N.E.3d 466 (Mass. 2021). That decision may be of relevance to the question of absolute immunity, but no party has attempted to argue the decision before this court. See, e.g., Fed. R. App. P. 28(j). We leave the matter to the district court in the first instance. The same goes for the defendants' invocation in their brief of testimonial immunity based on Watterson v. Page, 987 F.2d 1 (1st Cir. 1993). We decline to reach that issue in the first instance, though the district court is free to consider the matter on remand if it concludes it would be appropriate to do so.

In accordance with the foregoing, the judgment of the district court is affirmed in part and vacated in part, and the matter is remanded to the district court for further proceedings consistent with this decision.

**Affirmed in part, vacated in part, and remanded**.

By the Court:

Maria R. Hamilton, Clerk

cc:
Hon. Nathaniel M. Gorton
Robert Farrell, Clerk, United States District Court for the District of Massachusetts
John Doe
Nicholas W. Rose