United States District Court
District of Massachusetts

```
_____
                               )
John Doe, Father and Next Friend )
of A, B and C,                   )
                                 )
          Plaintiff,             )      Civil Action No.
                                 )      18-12547-NMG
          v.                     )
                                 )
Linda Spears et al.,             )
                                 )
          Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a family law dispute in which
employees of the Massachusetts Department of Children and
Families ("the DCF") temporarily removed three children, all of
whom were minors at the time, from the residence of their
father, Benjamin Tariri ("Tariri" or "plaintiff").   Plaintiff
claims in his amended complaint that Linda Spears, the
Commissioner of the DCF ("Commissioner Spears"), Patricia Kelly,
a social worker employed by the DCF ("Kelly"), and Judith
Edwards, Kelly's supervisor ("Edwards" and, collectively, "the
defendants"), intentionally violated his constitutional rights
during the DCF's investigation into allegations of child abuse.

This Court previously dismissed plaintiff's amended
complaint in its entirety based upon, inter alia, sovereign

immunity, qualified immunity and the Rooker-Feldman doctrine.
Plaintiff appealed to the First Circuit Court of Appeals ("the
First Circuit"), which affirmed, in part, and vacated, in part,
and the matter was remanded to this Court for further
proceedings.  Now before the Court is defendants' renewed motion
to dismiss plaintiff's amended complaint.  For the reasons set
forth below, defendant's renewed motion to dismiss (Dkt. No. 49)
will be allowed, with the caveat that plaintiff will be granted
one final opportunity to correct the shortcomings of his amended
complaint.

I.  **Background**

    **A.  Facts**

    Plaintiff is the father of three children, identified as
"A", "B" and "C", who were 14, 12 and 9 years old when the child
abuse investigation at issue began.  At the time, all three of
the children lived with plaintiff.  In late October, 2014, Kelly
called plaintiff to ask if she could meet with him and his
children at his residence.

    During her visit several days after the call, Kelly
informed plaintiff that she was investigating an allegation that
he had kicked and slapped "C", the youngest child.  Plaintiff
immediately denied the allegation.  Kelly told plaintiff that
"A", the oldest child, had confirmed that plaintiff hit "C".  In
his complaint, plaintiff contends that "C"'s mother prompted "C"

to fabricate the allegations of abuse and that "A" substantiated
the false allegations because he was a teenage boy who was upset
with his father.  Plaintiff further contends that there were
never any bruises or other marks on "C" or either of the other
children.

Neither Plaintiff nor his children heard from DCF for more
than one month after Kelly's November, 2014 visit.  Kelly then
called plaintiff at his work in December, 2014, and told him
that the children were being removed from his residence and
placed in DCF custody.  The next day, plaintiff was informed of
his right to a "72-hour hearing" during which the juvenile court
would hear evidence to determine whether temporary removal of
the children was justified.  Plaintiff received a "petition"
that the DCF filed with the juvenile court alleging that
plaintiff had abused "C" by slapping and kicking him.

Plaintiff avers that defendants attempted to coach the
children to testify against him at the hearing and that he was
not permitted to be present during their testimony or to cross-
examine them.  Plaintiff also alleges that, despite being
coached by the DCF, the children testified they were not afraid
of their father.  In January, 2015, however, the juvenile court
determined that the DCF had satisfied its burden of proof,
removed the children from the custody of plaintiff and
temporarily placed the children with their mother.

Plaintiff next alleges that defendants prevented him from seeing or communicating with his children for an extended period of time despite the limited visitation rights that the juvenile court had allowed him.  Plaintiff also contends that Kelly advised his children it would not be good for them to see their father and that she never informed the children that plaintiff had been asking to see them.  Kelly, meanwhile, allegedly told plaintiff that his children did not want to see him even when, in fact, the contrary was true and they had already visited with him surreptitiously.

In addition, plaintiff submits that defendants provided false evidence in state court regarding his fitness and readiness to see his children.  In November, 2015, the DCF is alleged to have submitted a false report to the state probate court that plaintiff's therapist had determined he was unfit to see his children.  Several months later, in June, 2016, the therapist testified in open court that he never made any such statement.

Plaintiff explains that the DCF closed its case involving plaintiff and his family in February, 2016, and that the DCF was then dismissed from the state probate court case in March, 2016. The DCF never proved its charge of abuse against plaintiff, who alleges that he and his three children have suffered multiple

and serious injuries as a result of their lengthy separation and the extended proceedings.

### B. Procedural History

In December, 2018, plaintiff filed a complaint and a motion to impound and seal the information contained in the complaint. Shortly thereafter, he filed an amended complaint in which he asserts 16 claims.

In January, 2019, defendants filed a motion to dismiss the amended complaint, asserting that plaintiff's claims were barred by various doctrines of immunity and otherwise lacked merit. In July, 2019, this Court allowed the motion to dismiss in its entirety. Plaintiff appealed to the First Circuit which, as previously stated, affirmed, in part, vacated, in part, and remanded. The claims now before the Court are as follows:

1. Plaintiff's procedural due process claim under 42 U.S.C. § 1983 against an unspecified defendant ("DCF"), based upon the alleged submission of a false report to the state probate court.

2. Plaintiff's constitutional familial integrity claim under 42 U.S.C. § 1983 against Kelly in her individual capacity based upon her alleged intentional sabotage of plaintiff's court-approved visitation rights.

3.  Plaintiff's claim for intentional infliction of emotional distress against Kelly in her individual capacity for the same alleged sabotage and deception.

## II.  **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When considering the merits of a motion to dismiss, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the court's inquiry must focus on the reasonableness of the

inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

    **i.  The Procedural Due Process Claim**

Plaintiff's amended complaint asserts a due process violation under § 1983 based upon the alleged presentation of a false report to the state probate court in November, 2015. As construed, that allegation sets forth a plausible violation of the Fourteenth Amendment to the United States Constitution. The knowing submission of false evidence to a court is, furthermore, an obvious violation of clearly established due process rights that does not afford the offending official the protection of qualified immunity. See, e.g., Hardwick v. Cty. of Orange, 844 F.3d 1112, 1118-20 (9th Cir. 2017) (affirming the determination of the district court that perjury by government-employed social workers and the use of false evidence were incompatible with the Fourteenth Amendment guarantee of due process in court and thus defendants were not entitled to qualified immunity).

As it is currently set forth in his amended complaint, however, plaintiff's due process claim must be dismissed. See Pease v. Burns, 719 F. Supp. 2d 143, 154-55 (D. Mass. 2010) (dismissing plaintiffs' procedural due process claim because it failed "to demonstrate a causal relationship between the deprivation asserted and any of the [] individual defendants

actually named in the Complaint"). The amended complaint fails to identify which, if any, of the three individual defendants allegedly submitted the false November, 2015 report to the probate court. Instead, the relevant factual allegations in the complaint refer generally to "Defendant DCF" or "DCF" as the responsible party.

> Plaintiff contends that, in November, 2015,
>
> Defendant DCF then wrote a "report" to the Probate court . . . DCF wrote to the Judge that according to the therapist, Mr. Ferreira, [plaintiff] had been "manipulative" and that "he was in no shape of readiness to start family therapy or to see his children."

Dkt. No. 7, ¶ 312. Plaintiff repeats that allegation, again with respect to what "DCF" wrote, in an entirely separate portion of the complaint. Id. at ¶ 436. The DCF is not, however, a defendant in this action and none of the individual DCF employees presently before the Court is subject to suit in her official capacity.

Even when read in the context of the entire complaint, plaintiff's generalized claim against "Defendant DCF" or "DCF" for submitting the false report lacks specific factual support capable of establishing a basis for recovery against Commissioner Spears, Kelly and/or Edwards in their individual capacities. Leavitt v. Corr. Med. Servs., 645 F.3d 484, 502 (1st Cir. 2011) (affirming the conclusion of the district court that

plaintiff's group liability theory could not provide the basis for recovery because it is "axiomatic" that persons sued in their individual capacities under § 1983 may be held liable only on the basis of that person's particular actions or omissions).

In his opposition to the motion to dismiss, plaintiff quotes from ¶ 436 of his amended complaint but he replaces the subject "DCF" with "these Defendants" in an apparent attempt to direct the allegations against the defendants Kelly and Edwards. Compare Dkt. No. 7, ¶ 436 with Dkt. No. 71, at 6. That substitution is not, however, supported by any facts alleged in the amended complaint.

In a similar vein, plaintiff's opposition to the motion to dismiss states that "Defendant Kelly wrote" the report at issue. Id. at 10. It is improper, however, for a plaintiff to "bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss." Decoulos v. Town of Aquinnah, No. 17-CV-11532-ADB, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018), aff'd, No. 18-1820, 2019 WL 11234357 (1st Cir. Dec. 10, 2019).

Plaintiff's claim, therefore, is subject to dismissal because the amended complaint does not identify who, if any, of the three individual defendants was responsible for writing and/or submitting the allegedly false report to the Massachusetts Probate Court. See Iqbal, 556 U.S. 622 at 676

- 9 -

(holding that "a plaintiff must plead that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution."); Redondo Waste Sys.,
Inc. v. Lopez-Freytes, 659 F.3d 136, 140 (1st Cir. 2011)
(holding that a plaintiff's "complaint must allege facts linking
each defendant to the grounds on which that particular defendant
is potentially liable").  The Court is amenable to considering a
second amended complaint that addresses this deficiency if such
an amendment is warranted by the facts.

### ii.  The Constitutional Familial Integrity Claim

Plaintiff asserts a Fourteenth Amendment claim against
defendant Kelly under § 1983 based upon the alleged sabotage of
his court-approved visitation rights.  Mr. Tariri's allegations
are insufficient to overcome Kelly's entitlement to the defense
of qualified immunity.  The doctrine of qualified immunity
provides government officials immunity from suit

> when an official's conduct does not violate clearly
> established statutory or constitutional rights of
> which a reasonable person would have known.

White v. Pauly, 580 U.S. 73, 78-79 (2017) (cleaned up).

Courts in the First Circuit follow a two-prong analysis
when evaluating whether a defendant is entitled to qualified
immunity.  A court may address the two prongs sequentially or it
may resolve a case based upon the second prong alone.  Barton v.
Clancy, 632 F.3d 9, 22 (1st Cir. 2011).  The first prong asks

- 10 -

whether the facts alleged by a plaintiff state a violation of a constitutional right, and the second prong asks whether the right was "clearly established" at the time of the alleged violation.  See, e.g., Díaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011).  The second prong of the analysis itself consists of two parts:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official.

Id.

The Supreme Court has recognized a constitutional right to familial integrity but that right is neither "absolute [n]or unqualified." Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992).  The fundamental rights of the child, as well as the government's interest in the health and welfare of children as future citizens, must also be considered. Id. at 929-31.  This Court must, therefore, look to the specific allegations against Kelly in light of the rest of the facts, and the rest of the implicated interests, set out in the amended complaint.

In support of his familial integrity claim, Tariri avers that Kelly 1) repeatedly told the children it would not be good for them to visit with him, 2) informed plaintiff that "A" did not want to visit with him when "A" was in fact visiting him

surreptitiously, 3) never told the children that plaintiff had been asking to see them and 4) never told the plaintiff that his children wanted to see him.  It is unclear from the amended complaint exactly what visitation rights plaintiff was granted by the juvenile court or what the ultimate effect of Kelly's alleged sabotage was on those limited rights.  It is reasonable to infer that Kelly's conduct disrupted at least some potential visitations that otherwise would have occurred.

At the time of Kelly's purported sabotage, however, the children had been temporarily removed from plaintiff's custody by the juvenile court pursuant to an investigation into allegations of child abuse.  Based upon the facts submitted in the amended complaint, including Kelly's advisement to the children that it would not be good for them to see the plaintiff, it is reasonable to infer that Kelly had cause to believe, and did believe, that plaintiff had physically abused at least one of the children.

Under these circumstances, plaintiff's limited constitutional interest in familial integrity, although sincere, must be balanced against the government's interest in investigating allegations of child abuse and taking remedial action to protect children. See Connor B. ex rel. Vigurs v. Patrick, 774 F.3d 45, 58 (1st Cir. 2014).  Kelly, a social worker intimately involved with the investigation at hand, had

some amount of leeway to act in the interest of what she had reason to believe were imperiled children. See Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 22 (1st Cir. 2001) (recognizing that it is preferable for a case worker to err on the side of caution rather than decline to protect a potentially imperiled child).  Thus, Kelly's alleged conduct did not violate any clearly established constitutional right and she is entitled to qualified immunity.

### iii.  The Intentional Infliction Of Emotional Distress Claim

Plaintiff also asserts a claim for intentional infliction of emotional distress against Kelly based upon the same alleged sabotage of communications and visitations between plaintiff and his children.  Even assuming plaintiff has averred a viable claim for such emotional distress, that claim is barred by the Massachusetts common law of qualified immunity.  Under Massachusetts common law,

> a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption.

Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 146 (1st Cir. 2016) (citation omitted).  There is a presumption "in favor of the honesty and sufficiency of the motives" for an official's conduct when she is ostensibly taking action "for the general welfare." Id. (citation omitted).

- 13 -

In view of the foregoing circumstances under which Kelly allegedly interfered with plaintiff's visitation rights, such a presumption in favor of her motives is supported by the factual allegations in the amended complaint.  Although it can be inferred that Kelly did not pass along every message or report between the plaintiff and his children that the plaintiff would have preferred, thereby forestalling some potential visits, there are no non-conclusory allegations that suggest a malicious or corrupt motive.  Instead, it appears that Kelly's actions were good faith efforts to protect the welfare of the children. Tariri's claim for intentional infliction of emotional distress against Kelly does not, therefore, overcome her defense of qualified immunity under Massachusetts common law.

**ORDER**

For the foregoing reasons, the motion of defendants Linda Spears, Patricia Kelly, and Judith Edwards to dismiss plaintiff's amended complaint (Dkt. No. 49) is **ALLOWED,** but plaintiff is not foreclosed from seeking to file a second amended complaint with respect to the procedural due process claim if such an amendment is warranted by the facts.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  September 22, 2022